# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMIE H., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 20-cv-00634-SH |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jamie H. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claims for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, 1381-1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits.

**I.     Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A) (regarding disabled individuals). The impairment(s) must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot,

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. §§ 404.1520, 416.920. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the [administrative] record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Background and Procedural History

Plaintiff protectively filed for Title II and XVI disability benefits on March 20, 2019. (R. 12, 210-13, 215-20.) In her applications, Plaintiff alleged she has been unable to work since September 6, 2018, due to conditions including neuropathy, diabetes, obesity, chronic back pain, anxiety, and severe depression. (R. 210, 215, 241.) Plaintiff was 34 years old at the time of the ALJ's decision. (R. 23, 210.) Plaintiff has at least four years of college education and past relevant work as a delicatessen counter worker, lobby porter, gambling cashier, and vault cashier. (R. 39-46, 51-52, 242.)

Plaintiff's claims for benefits were denied initially and upon reconsideration. (R. 123-30, 133-43.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted on March 31, 2020. (R. 29-58, 144-45.) The ALJ then issued a decision denying benefits and finding Plaintiff not disabled. (R. 12-23.) The Appeals Council denied review on September 29, 2020 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. §§ 404.981, 416.1481. Plaintiff timely filed this

appeal on December 3, 2020 (ECF No. 2), within 65 days of that order. *See* 20 C.F.R. § 422.210(c).

### III. The ALJ's Decision

In her decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2023. (R. 14.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 6, 2018. (*Id.*) At step two, the ALJ found Plaintiff had the following severe impairments: (1) major depressive disorder and (2) obesity. (*Id.*) The ALJ, however, determined that Plaintiff's neuropathy of the bilateral feet was a non-severe impairment and found her diabetes mellitus to be non-medically determinable. (R. 15.) At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment. (R. 15-16.)

After evaluating the objective and opinion evidence, as well as Plaintiff's testimony, the ALJ concluded that Plaintiff had the RFC to perform "sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)" with mental limitations and the following physical limitations:

> The claimant is able to lift, carry, push or pull up to five pounds frequently and ten pounds occasionally. The claimant is able to sit for up to six hours in an eight-hour workday. The claimant is able to stand and/or walk up to two hours in an eight-hour workday. The claimant is able to occasionally climb ramps or stairs, balance, stoop or crouch. The claimant's job should not involve climbing ladders, ropes or scaffolds, kneeling or crawling. The claimant's job should not perform work performed near unprotected heights or hazardous moving mechanical parts.

(R. 16-17.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 17-21.) At step four, the ALJ found Plaintiff unable to perform any of her past relevant work. (R. 21.) Based on the testimony of a vocational expert ("VE"), however, the ALJ

4

found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as document preparer, touchup screener, and polisher. (R. 22-23.) Accordingly, the ALJ concluded Plaintiff was not disabled from September 6, 2018, through the date of the decision. (R. 23.)

## IV. Issues

Plaintiff raises five allegations of error in her challenge to the denial of benefits: (1) the ALJ failed to properly consider Plaintiff's neuropathy of the bilateral feet, type 2 diabetes, and anxiety disorder at steps two, four, and five (ECF No. 13 at 8-12); (2) the ALJ failed "to inquire as to the circumstances surrounding [Plaintiff's] purported failure to obtain treatment" (*id.* at 9); (3) the ALJ's step-five analysis was flawed because she failed to include certain limitations in her hypothetical to the VE (*id.* at 11-12); (4) the ALJ erred in her consideration of the medical opinion of Dr. Thomas Britt (*id.* at 13-15); and (5) the ALJ improperly ignored the medical opinion of Penny Johnson, ARNP (*id.*).

The Court finds the ALJ erred by wholly ignoring Ms. Johnson's medical opinion and failing to discuss it in accordance with 20 C.F.R. §§ 404.1520c and 416.920c. As such, the undersigned reverses and remands for proceedings consistent with its Opinion and Order and does not address Plaintiff's other arguments.

## V. Analysis – the ALJ's Consideration of the Medical Opinion of Penny Johnson, ARNP

As mentioned above, among Plaintiff's numerous allegations of error, she maintains "the ALJ ignored the medical opinion provided by Nurse Practitioner Penny Johnson from May 2019," which, she argues "constitutes significant legal error." (ECF No. 13 at 13.) The Commissioner does not dispute that the ALJ failed to mention Ms.

Johnson's opinion, but asserts it was "irrelevant" and that any error was harmless.[2] (ECF No. 14 at 13.)

### A.   Consideration of Medical Opinions Generally.

A medical opinion "is a statement from a medical source about what [the claimant] can still do despite [her] impairment(s) . . . ."  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).  An acceptable medical source includes an Advanced Registered Nurse Practitioner ("ARNP") when the ARNP opines regarding impairments within her licensed scope of practice.  *See id.* §§ 404.1502(a)(7), 416.902(a)(7); *see also* POMS DI 22505.003(A), https://secure.ssa.gov/poms.nsf/lnx/0422505003 (last visited March 19, 2022).

When considering an individual's claim of disability, the ALJ does not give any specific evidentiary weight to medical opinions.  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ evaluates the persuasiveness of all medical opinions by considering the following factors: (i) the supportability of the opinion; (ii) the consistency of the opinion; (iii) the medical source's relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship); (iv) the medical source's specialization; and (v) any other factors that tend to support or contradict the opinion.  *Id.* §§ 404.1520c(c), 416.920c(c).

---

[2] Myopically looking at just one page of the record, the Commissioner also appears to question whether Ms. Johnson has "a medical credential or treatment relationship" with Plaintiff, stating she simply "appeared to work at Gap Medical Clinic . . . ." (ECF No. 14 at 13.)  As discussed below, the evidence in the record indicates that Ms. Johnson is an ARNP who has treated Plaintiff in the past.  The Court also notes the Commissioner's apparent difficulty reading the cursive writing.  (*Id.* (labeling it "almost unreadable").)  It appears the lines quoted read, "pt has shortness of breath due to obesity & exertion increases this problem which increases fatigue" and "Pt has neuropathy, vascular insufficiency which exacerbates bilateral leg pain.  Pt also has SOB with ambulating." (R. 321.)  In any event, had the ALJ considered the evidence, any questions regarding Ms. Johnson's qualifications or clarifications required of her handwritten notes could have been raised then.  These do not excuse the ALJ's complete failure to consider the evidence.

While the ALJ considers all five factors, she generally must discuss only two—supportability and consistency. *Id*. §§ 404.1520c(b)(2). 416.920c(b)(2). Supportability refers to information internal to the medical source offering the opinion: "The more relevant the objective evidence and supporting explanations presented by a medical source are to support . . . her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." *Id*. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency, meanwhile, is external: "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id*. §§ 404.1520c(c)(2), 416.920c(c)(2). Supportability and consistency are the most important factors, and the ALJ must explain how both factors were considered. *Id*. §§ 404.1520c(b)(2), 416.920c(b)(2).

Further, the current regulations make clear that the ALJ must consider and weigh the persuasiveness of each medical opinion in the record from an acceptable medical source. *See id*. §§ 404.1520c(b), 416.920c(b) (noting "[w]e will articulate" in the "decision how persuasive we find all of the medical opinions" in the claimant's record (emphasis added)). This tracks with how medical opinions were considered under previous regulations and how record evidence is treated generally. *See, e.g., Vigil v. Colvin*, 805 F.3d 1199, 1201-02 (10th Cir. 2015) ("An ALJ must 'give consideration to all the medical opinions in the record . . . .'" (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012))); *Victory v. Barnhart*, 121 F. App'x 819, 825 (10th Cir. 2005) (unpublished) ("Inexplicably, the ALJ's decision makes no mention whatsoever of Dr. Hale's reports or opinions, and gave no reasons for disregarding his opinion," which "was, of course, clear

legal error.");[3] *see also* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3) ("We will consider all evidence in [the claimant's] case record when we make a determination or decision . . . ."); *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, [she] may not ignore evidence that does not support [her] decision, especially when that evidence is 'significantly probative.'" (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996))).

### B. The Medical Opinion of Penny Johnson, ARNP.

Penny Johnson rendered her medical opinion on May 20, 2019, on a form titled *Medical Opinion Re: Sedentary Work Requirements*. (R. 321.) Therein, she opined that Plaintiff could not stand and/or walk for up to two hours in an eight-hour workday, sit for up to six hours in a normal seated position, lift and carry ten pounds, lift five pounds on a repetitive basis, or stoop for up to two hours in an eight-hour workday. (*Id.*) Ms. Johnson further opined that Plaintiff was required to elevate her legs and would need to take unscheduled breaks during an eight-hour workday. (*Id.*) She also found, however, that Plaintiff could utilize both her hands for fine manipulation, did not require the use of a hand-held assistive device, could sustain activity at a pace and with the attention to task as would be required in a competitive workplace, could sustain normal work stress in a routine work setting on a day-to-day basis, and could be expected to attend employment on a sustained basis. (*Id.*)

Additionally, Ms. Johnson listed the non-exertional impairments that limited Plaintiff's ability to function, noted that Plaintiff's obesity exacerbated her limitations, and described supportive objective medical findings. (*Id.*) Ms. Johnson discussed

---

[3] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

Plaintiff's "shortness of breath due to obesity," her "neuropathy" and "vascular insufficiency," and her "leg pain." (*Id.*)

### C. ALJ's failure to consider the opinion of Penny Johnson, ARNP.

Though the Commissioner argues the ALJ's omission was justified, it is undisputed the ALJ failed to discuss Ms. Johnson's opinion in any form or fashion. (ECF No. 14 at 13; R. 12-23.) The undersigned agrees with Plaintiff that this was clear legal error. *Victory*, 121 F. App'x at 825. Ms. Johnson was an ARNP (R. 373) who offered opinions regarding what Plaintiff could do despite her impairments in accordance with 20 C.F.R. §§ 404.1513(a)(2) and 416.913(a)(2).[4] (R. 321.) These statements were opinions the ALJ was obligated to assess to determine their persuasive value. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). While the ALJ was not required to find Ms. Johnson's opinion persuasive, she was required to consider it and to articulate that consideration. Despite generally stating she "considered the medical opinion(s)" (R. 17), the undersigned cannot tell from the ALJ's decision that she was even aware of Ms. Johnson's opinion (R. 12-23). *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) ("boilerplate language fails to inform [the Court] in a meaningful, reviewable way of the specific evidence the ALJ considered"). As such, this error must be remedied on remand.

### D. The Error was not Harmless.

While the Commissioner argues that the ALJ's error was harmless, she correctly does not assert that the <u>substance</u> of Ms. Johnson's opinion would be irrelevant if

---

[4] The Commissioner does not argue these opinions fall outside of Ms. Johnson's licensed scope of practice, 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7), perhaps because the Commissioner failed to note that Ms. Johnson was a nurse practitioner. In any event, because the ALJ failed to consider Ms. Johnson's opinion at all, no such determination was made. The Court will not make that determination for the first time on appeal.

9

credited. Ms. Johnson's opinion added limitations not found in Dr. Britt's opinion, such as a requirement that Plaintiff elevate her legs, but also differed somewhat with Dr. Britt's findings regarding Plaintiff's non-exertional abilities, such as when she determined that Plaintiff could be expected to attend employment on a sustained basis.[5] (*Compare* R. 321 *with* R. 846-48.) Moreover, as the ALJ found Dr. Britt's opinion to be unpersuasive in comparison with the rest of the record (R. 20), the presence of a substantially similar opinion (if credited) could have altered the decision of a reasonable factfinder as to the persuasiveness of Dr. Britt's opinion.

Instead, the Commissioner offers a post-hoc justification for why the ALJ could (or perhaps, even, should) have rejected Ms. Johnson's opinion had she considered it. (ECF No. 14 at 13-14.) Engaging in an analysis that should have been done by the ALJ in the first instance, the Commissioner argues Ms. Johnson's opinion was "unsupported and unpersuasive" because her "check-the-box style evaluation form[]" appeared to "be the only document linking Plaintiff and Ms. Johnson." (*Id.*) Moreover, the Commissioner argues Ms. Johnson's opinions were unsupported and inconsistent with the record as a whole.[6] (*Id.*) Not only are the Commissioner's statements about Plaintiff's treatment relationship with Ms. Johnson untrue,[7] but none of these arguments justify the ALJ's

---

[5] Dr. Britt, meanwhile, opined that Plaintiff would be absent from work as a result of her impairments more than four times a month. (R. 847.)

[6] In making her arguments, the Commissioner cites to inapplicable regulations. (*See* ECF No. 14 at 13 (citing 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3)).) Sections 404.1527 and 416.927 apply only to claims filed before March 27, 2017. Plaintiff's claims were filed in 2019. (R. 12.)

[7] Based on the Court's review of the record, it appears Ms. Johnson saw Plaintiff numerous times. (*See, e.g.*, R. 359, 363, 369, 371-373.)

10

failure to discuss a relevant medical opinion contained in the record.[8] The Commissioner asks the Court to step into the shoes of the ALJ and engage in a persuasiveness analysis for the first time on appeal. This is improper and does not render the ALJ's error harmless.

The harmless error doctrine is applied cautiously in the context of social security disability cases. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). Even so,

> it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.

*Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). However, to the extent any "harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action . . . ." *Id.* The undersigned "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (citing *Allen*, 357 F.3d at 1145). Specifically, courts may not affirm any "post hoc effort to salvage the ALJ's decision [that] would require [it] to overstep [its] institutional role and usurp essential functions committed in the first instance to the administrative process." *Allen*, 357 F.3d at 1142.

---

[8] The Commissioner cites *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987), for the proposition that "check-the-box style evaluation forms have little persuasive value." (ECF No. 14 at 14.) While the *Frey* court noted that such evaluation forms, standing alone, are not substantial evidence, *id.* at 515, it did not hold that an ALJ may ignore opinion evidence entirely, *see id.* at 513 (showing the ALJ considered and weighed the opinion of the consulting physician offering the check-mark style opinion). Moreover, Ms. Johnson's opinion also included a narrative discussion and was offered in the midst of numerous treatment files.

As noted above, it is the ALJ's duty to evaluate all medical opinions. Because the Court is prohibited from reweighing evidence, *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007), or conducting this analysis itself, the undersigned finds the ALJ's failure to discuss Ms. Johnson's opinion was not harmless error.

## VI. Conclusion

The ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 21st day of March, 2022.

**SUSAN E. HUNTSMAN, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**